UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| ANIMAL INTELLIGENCE SOFTWARE INC., Plaintiff, v. SARAH COLOMBINI OSBORN, et al., Defendants. | CASE NO. 3:26-cv-05391-BHS<br>ORDER |

This matter is before the Court on defendants Sarah Colombini Osborn, D.V.M. and Southwest Veterinary Dermatology's (SVD)[1] motion to dismiss. Dkt. 24.

Osborn is a veterinarian who owns and operates SVD, a veterinary practice in Houston, Texas. Dkt. 1 at 1. Osborn has lived at the same Houston address for the past twenty years. Dkt. 26. Plaintiff Animal Intelligence Software Inc. (AIS) is a Washington corporation that develops and licenses veterinary practice management software. Dkt. 1 at 1.

[1] SVD's legal name is "Sarah Colombini Osborn, D.V.M. P.A." The Court refers to both defendants collectively as "Osborn" unless a distinction is necessary, in which case it refers to the clinic as SVD.

In 2004, Osborn entered into a license and support contract with AIS to use its software at SVD. In 2011, she canceled the agreement but continued using the software without paying monthly support fees. More than 14 years later, Osborn contacted AIS for software assistance, revealing that she was still using it. AIS requested that Osborn cease using the software or start paying license fees. Osborn refused and AIS now sues, asserting claims for breach of contract, unjust enrichment, and copyright infringement.

Osborn seeks dismissal under Federal Rules of Civil Procedure 12(b)(5) for failure of service and Rule 12(b)(6) for failure to state a claim. She argues that AIS' claims are time barred and that AIS has failed to plausibly allege ownership and registration of the software copyright. Osborn asks the Court to dismiss the claims with prejudice.

AIS argues that the claims did not accrue until 2025, when it discovered that Osborn was still using the software. It contends that each day Osborn continues to use its software is a new breach of contract and act of copyright infringement. If the Court does not agree, it asks for leave to properly serve process and amend its complaint.

## I. FACTUAL BACKGROUND

In 2004, AIS and Osborn executed an "integrated contract" that included, among other documents, a "Software License" and a "Client Support Policy/Service Contract." Dkt. 1., Ex. A at 14. The Software License granted Osborn a "limited, non-exclusive, non-transferable license" to use AIS software on up to five workstations. *Id.* at 20; *see also* Dkt. 1 at ⁋ 3.1. It also provided that "no title or ownership of software" transferred to Osborn, *id.* at 24, and that upon "termination or expiration of the license," Osborn was

required to cease using the software and return all copies of the software and related materials. *Id.* at 20.

The Service Contract required AIS to furnish ongoing technical support and software maintenance for a contracted monthly rate. Dkt. 1, Ex. A at 22. The contract also provided that if a client gave written notice of nonrenewal after the agreement expired, the client would be charged at the prevailing rates specified in the agreement. *Id.* at 23. Clients without contracted support for more than one year were subject to a reinstatement fee and potentially a release fee to assess and update the operating system. *Id.* Noncontracted support was available at a rate of $250 per incident plus reinstatement and release fees. *Id.*

In December 2010, AIS proposed a new support contract with revised pricing that represented an approximately 87% increase in support fees. Dkt. 1 at ⁋ 3.4. It also added new language:

> Client agrees to pay License and Support Fees[.] . . . As long as Client is current in the payment of all license and support fees, with respect to each site, Client will be entitled to License and Support for each site[.] . . . Failure to pay maintenance fees with respect to any Site shall be deemed a material breach of this Agreement and in such event, AIS, Inc. shall have the right to terminate the rights granted hereunder with respect to such site.

Dkt. 1, Ex. B at 29.

On January 6, 2011, Osborn called "TJ Driver from AIS management" [2] and expressed her dissatisfaction with the price increase and inquired about canceling

[2] The 2011 proposed contract refers to "T.L. Driver, PhD, President/CEO," Dkt. 1, Ex. B at 30, and the copyright registration refers to "Thomas L. Driver," Dkt. 8. It is unclear whether "TJ Driver" refers to the same person.

support. Dkt. 1 at 3; *id*, Ex. D at 40. Driver advised Osborn that canceling support would terminate her software license and require removal of the software. Dkt. 1, Ex. At 40. Osborn responded that she had purchased the software, but Driver explained that she had purchased only a license to use it, not ownership of it. *Id.*

The following week, Osborn sent AIS a letter canceling AIS support effective January 31, 2011, and stating that she expected "to retain all rights and functionality of [AIS] software" under the terms of the original agreement. Dkt. 1, Ex. C at 38. On February 16, 2011, AIS charged Osborn a "License Fee, including support and maintenance" for the first quarter of 2011, but the charge was withdrawn after Osborn disputed it. Dkt. 1, Ex. E at 42, 45. The parties had no further communication for approximately 14 years.

In February 2025, Thomas L. Driver applied to register his "Animal Intelligence Software AIGalaxy/AIGenesis Telemedicine Edition" software with the U.S. Copyright Office, identifying AIS as the contact for rights and permissions. Dkt. 25, Ex. D at 10.

In August 2025, Osborn contacted AIS regarding an error with the software's appointment scheduler and asked for a cost estimate to get it working again. Dkt. 1 ⁋ 3.9(a), (b). AIS representative Brad Osterman informed Osborn that her account had been canceled, that her software version was no longer sold or supported, and that the software should have been returned upon cancellation. *Id.* at ⁋ 3.9(c). He also advised her that any continued use of AIS software was unauthorized and that support was unavailable. *Id.* He provided a verbal quote to reinstate her software license and recommended upgrading to the current cloud-based version. *Id.* at ⁋ 3.9(d). AIS later sent her a formal written quote.

Osborn responded by email, “We have opted to go with another system.” Dkt. 1, Ex. F at 47.

In September 2025, AIS’s counsel sent Osborn a letter alleging unauthorized software use, breach of contract, and copyright infringement. Dkt. 1, Ex. H at 57. AIS asserted that due to her breach, it had lost $63,567.82 in support revenue and $22,500 in upgrade fees. *Id.* at 58. It offered to settle all claims for $100,000.

Osborn’s responsive email denied unauthorized use of the software and breach of the 2004 contract. Dkt. 1, Ex. I at 60. She asserted that under that contract’s plain language, she could cancel monthly support without terminating her license to use the software.

On January 7, 2026, Osborn’s IT representative, Brandon Whiting, called AIS customer support regarding a license error message. Osterman reiterated to Whiting what he had previously told Osborn: that she was not an active client, she should not be using AIS software, and AIS could not provide support unless she became an active client. Osterman also informed the AIS executive team that despite Osborn’s claims of switching to another system, her clinic was still actively using AIS software.

AIS sued in April 2026. It asserts breach of contract, copyright infringement, and unjust enrichment claims. Dkt. It seeks compensatory and statutory damages, a permanent injunction requiring Osborn to cease using its software, and reasonable attorneys’ fees and costs. *Id.* at 10.

Osborn moves to dismiss the claims as time barred. She also argues that service was improper because AIS failed to make reasonable attempts to serve her and SVD at

her home. Lastly, she argues that Thomas Driver, not AIS, owns the copyright registration, and thus, AIS does not have standing to assert an infringement claim.

The issues are discussed in turn.

## II. DISCUSSION

### A. Service on Osborn and SVD was insufficient, but additional time for proper service is warranted.

AIS claims that after process servers made several unsuccessful attempts to personally serve Osborn at her home and office, it mailed the documents by regular and certified mail and left a copy with the United States District Court clerk pursuant to RCW 4.28.080(15) and FRCP 5(b)(2). Dkts. 16, 18. AIS claims that it served SVD by leaving the documents with SVD's receptionist, Cecil, despite Cecil's refusal to accept service and her statement that Osborn was retired. Dkt. 17.

Osborn challenges both service attempts. First, Osborn argues that service by certified mail was improper because AIS failed to exercise reasonable diligence in attempting to serve her personally at her Houston home. She emphasizes that AIS provides no details or evidence of any attempts at service. Second, Osborn argues that substitute service on SVD's receptionist was improper because Osborn is the designated registered agent and AIS failed to reasonably attempt service at her registered home address.

Rule 4 requires service of a summons along with the complaint by any non-party over 18 years old. Fed. R. Civ. P. 4(c). An individual may be served by: (1) following state law for serving a summons in the state where the District Court is located or where

service is made; (2) delivering a copy of the summons and complaint to each individual defendant personally; (3) leaving a copy of the summons and complaint at each individual defendant's dwelling or usual place of abode with someone of suitable age who resides there; or (4) delivering a copy of the summons and complaint to an agent authorized by appointment or by law to receive service of process. Fed. R. Civ. P. 4(c)(2), (e). Unless a defendant is served with process pursuant to Rule 4, a federal court lacks personal jurisdiction over the defendant. *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 350 (1999).

Under Rule 12(b)(5), a defendant may challenge any departure from the proper procedure for serving the summons and complaint as "insufficient service of process." The plaintiff must then show that service was proper. *Brockmeyer v. May*, 383 F.3d 798, 801 (9th Cir. 2004). If service is insufficient, the Court may either dismiss the case or retain it while quashing the service made on the defendant. *Clark v. Washington State Dep't of Health*, 735 F. Supp. 3d 1334, 1349 (W.D. Wash. 2024).

The Court must extend the time for service if the plaintiff shows good cause. Rule 4(m); *In re Sheehan*, 253 F.3d 507, 512 (9th Cir. 2001). In determining whether good cause exists, the Court considers whether "(a) the party that had to be served personally received actual notice, (b) the defendant would suffer no prejudice from the defect in service, (c) there is a justifiable excuse for the failure to serve properly, and (d) the plaintiff would be severely prejudiced if his complaint were dismissed." *Borzeka v. Heckler*, 739 F.2d 444, 447 (9th Cir. 1984). Even without good cause, however, the Court has "broad" discretion to grant an extension. *Sheehan*, 253 F.3d at 513.

AIS argues that service was proper under RCW 4.28.080(15) and Federal Rule of Civil Procedure 5(b)(2)(C). But neither rule permits service by regular nor certified mail alone. Although RCW 4.28.080(15) permits service by mail when personal service cannot be made with reasonable diligence, it requires leaving the summons and complaint with a qualified person at the defendant's usual mailing address and then mailing another copy. AIS has not done so. And Rule 5 does not apply because it governs service of subsequent pleadings (a pleading filed after the original complaint); Rule 4 governs service of the summons and complaint.

In addition, AIS fails to show that service on SVD was proper. Under Rule 4(h), an unincorporated association may be served in the manner prescribed for a defendant in Rule 4(e)(1) or by delivering the summons and complaint to an officer, a managing or general agent, or another agent authorized to receive service. The process server identified the receptionist as an "authorized person" under Texas Rules of Civil Procedure, but AIS offers no facts defending such a characterization. Indeed, Osborn is SVD's registered agent and AIS offers no evidence that it attempted to serve SVD at her registered address.

Although service was improper, dismissal is not warranted. *See S.J. v. Issaquah Sch. Dist. No.* 411, 470 F.3d 1288, 1293 (9th Cir. 2006) (explaining that courts have the discretion to dismiss or quash service if it was insufficient, even where service would now be untimely). Osborn received actual notice of the lawsuit, timely responded, and identifies no prejudice from the improper service. Moreover, Rule 4 permits service under the law of the state where the service is made, and Texas law allows service by

certified mail through an authorized person. *See* Fed. R. Civ. P. 4(e)(1). The process server's report references the Texas Rules of Civil Procedure, but AIS relies solely on Washington law and does not explain whether or how the certified mailing complied with Texas law. Given AIS' reported efforts to properly serve Osborn at her home and office and the lack of identified prejudice, dismissal would elevate form over substance, needlessly consume the resources of the parties and the Court, and do little to advance the interests of justice.

Osborn's Rule 12(b)(5) motion to dismiss for insufficient service is **DENIED**. AIS' prior service is **QUASHED** and AIS is **ORDERED** to execute proper service of process on Osborn and SVD no later than November 20, 2026. Osborn may also agree to waive service. Failure to comply with this order will result in dismissal of this action.

### B. AIS fails to plausibly allege breach of contract, unjust enrichment, or copyright infringement claims.

#### 1. Legal Standard

Dismissal under Rule 12(b)(6) may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). A plaintiff's complaint must allege facts to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim has "facial plausibility" when the party seeking relief "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Although courts must accept as true the complaint's well-pled facts, conclusory allegations of law and

unwarranted inferences will not defeat an otherwise proper Rule 12(b)(6) motion to dismiss. *Vasquez v. Los Angeles Cnty.*, 487 F.3d 1246, 1249 (9th Cir. 2007); *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). This requires a plaintiff to plead "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

**2. AIS' breach of contract claim is time barred.**

AIS alleges that Osborn breached the License Agreement by failing to return the software and continuing to use it after she canceled the support contract. Dkt. 1 at 6–7.

Osborn argues that the six-year statute of limitations bars the claim because it accrued in 2011, when AIS learned that she was canceling the agreement but retaining the software. Dkt. 24 at 8.

AIS argues that the discovery rule applies to toll the statute of limitations and that the claim did not accrue until it discovered in 2025 that she breached the contract. Dkt. 27 at 4. It argues that whether it should have known of Osborn's breach is a question of fact that cannot be resolved at this stage. *Id.* at 5.

A claim arising from a written contract must be brought within six years after the cause of action accrues. A cause of action accrues when the party has the right to apply to a court for relief. *1000 Virginia Ltd. P'ship v. Vertecs Corp.*, 158 Wn.2d 566, 575,

(2006), as corrected (Nov. 15, 2006). A breach of contract claim generally accrues when the breach occurs, regardless of when the plaintiff discovers it. *Id.*; *see also Schreiner Farms, Inc. v. Am. Tower, Inc.*, 173 Wn. App. 154, 160 (2013) ("[A] general breach of contract claim accrues on the date of the breach, not discovery of the breach.").

AIS relies on *1000 Virginia* to argue that the discovery rule applies because Osborn concealed her breach. But *1000 Viriginia* limited the discovery rule to those cases involving contracts alleging latent construction defects. It expressly rejected the Court of Appeals' broader application of the discovery rule to general contract claims. *Id.* at 576–79. Because this case involves a software license agreement, and not a latent construction defect, the exception does not apply.

Furthermore, even if the discovery rule applied, Osborn did not conceal her breach, she informed AIS of her intentions in writing, in 2011. AIS had actual notice of any breach at that time. The discovery rule requires that "when a plaintiff is placed on notice by some appreciable harm occasioned by another's wrongful conduct, the plaintiff must make further diligent inquiry to ascertain the scope of the actual harm." *1000 Virginia*, 158 Wn.2d at 581. Osborn sent AIS a letter canceling AIS support and notifying it that she expected "to retain all rights and functionality of [AIS] software" under the terms of the original agreement. Dkt. 1, Ex. C at 38. AIS had no reason to doubt that Osborn meant what she said. Any breach of contract claim accrued, and the limitations period began to run, in 2011.

AIS alternatively argues that Osborn continues to breach the license agreement each day she uses the software, and that its claim arising from conduct within the past six

years is therefore timely. But Washington courts do not recognize a "continuing breach" theory[3] that extends the limitations period for contract claims. Instead, a contract claim accrues on the date of the breach. Any subsequent damages that flow from the breach are not severable from it. *See Schreiner Farms*, 173 Wn. App. at 161; *Ford v. Int'l Harvester Co.*, 399 F.2d 749, 752 (9th Cir. 1968).

Because AIS asserts a breach of contract claim more than six years after it accrued, it is time barred. Osborn's motion to dismiss AIS' breach of contract claim is **GRANTED**. Because amendment would be futile, AIS' breach of contract claim is **DISMISSED** with prejudice.

**3. AIS' unjust enrichment claim is time barred.**

AIS alleges that Osborn unjustly benefited from AIS' proprietary software to manage her veterinary practice. Dkt. 1 at 9. Osborn contends that this claim is barred by the three-year limitations period applicable to such claims. Dkt. 24 at 8.

AIS responds that "unjust enrichment accrues with each period of uncompensated use" and that Osborn received a "fresh, unjust benefit each quarter they ran the software without paying." Dkt. 27 at 5.

---

[3] The continuing services rule, on the other hand, remains good law in Washington. *Raner v. Fun Pimps Ent. LLC*, No. 3:22-CV-05718-TMC, 2024 WL 1557681, at *6 n.4 (W.D. Wash. Apr. 10, 2024). Under that rule, when services are provided under an agreement that sets no definite time for payment or completion, the statute of limitations does not begin to run until the services end. *Id.* at *5 (quoting *Perry v. Hillman*, 153 Wash. 689, 699 (1929). The rule does not, however, extend the limitations period for a continuing breach of contract. And it is undisputed that the services ended in 2011.

To prove unjust enrichment, the plaintiff must establish three elements: "(1) the defendant receive[d] a benefit, (2) the received benefit is at the plaintiff's expense, and (3) the circumstances make it unjust for the defendant to retain the benefit without payment." *Young v. Young*, 164 Wn.2d 477, 484-85 (2008). An unjust enrichment claim is subject to a three-year statute of limitations period. *Davenport v. Wash. Educ. Ass'n*, 147 Wn. App. 704, 737–38 (2008); RCW 4.16.080. It accrues when both the defendant's benefit and plaintiff's failure to compensate are "susceptible of proof," or in other words, when those facts can be established. *Eckert v. Skagit Corp*., 20 Wn. App. 849, 851 (1978).

Osborn stopped paying the license fee in 2011, more than 14 years before AIS filed this lawsuit. Osborn told AIS that she intended to continue using the software without paying any additional fees, and she did so. AIS could have argued in 2011 that it was unjust for Osborn to retain that benefit. As a result, the claim accrued in 2011 and is now time barred.

Osborn's motion to dismiss the unjust enrichment claim is **GRANTED.** Because amendment would be futile**,** the claim is **DISMISSED** with prejudice**.**

**4. AIS' fails to plausible allege copyright ownership.**

AIS alleges that Osborn willfully infringed its software copyright by "continuing to reproduce the software" on five computers, displaying the software on computer screens, and exercising the rights exclusive to the copyright owner. Dkt. 1 at 8. It argues that under the separate-accrual rule, every act of infringement within the last three years is timely regardless of when the first infringement occurred. Dkt. 27 at 5.

Osborn agrees that the separate-accrual rule limits AIS' copyright claim to the three years leading up to the filing of the complaint. She asserts, however, that this claim must fail because AIS has not pleaded ownership of a valid copyright registration. Dkt. 28 at 6.

To prove copyright infringement, a plaintiff must demonstrate "(1) ownership of the allegedly infringed work and (2) copying of the protected elements of the work by the defendant." *Unicolors, Inc. v. Urb. Outfitters, Inc.*, 853 F.3d 980, 984 (9th Cir. 2017). A plaintiff is also "required to show registration as an element of an infringement claim." *Id.* at 989. "A certificate of registration from the U.S. Copyright Office raises the presumption of copyright validity and ownership." *Id.*

AIS' complaint alleges that it is "the owner of all copyrights in the Animal Intelligence Software, which it created and developed, including the source code, object code, user interface, database structure, and related documentation." Dkt. 1 at 7. But as Osborn persuasively points out, the registration certificate identifies "Thomas L Driver," not AIS, as both the author and copyright claimant of the AIS software. Dkt. 25, Ex. D at 10. Although the certificate identifies AIS as the contact for "Rights and Permissions" to use the copyrighted software, that designation does not make AIS the owner of the copyright.

AIS next argues that copyright ownership may arise under the "work made for hire" doctrine, 17 U.S.C. § 201(b), or through assignment. Dkt. 27 at 6. Copyright ownership "vests initially in the author or authors of the work," which is generally the creator of the copyrighted work. 17 U.S.C. § 201(a); *see U.S. Auto Parts Network, Inc. v.*

*Parts Geek, LLC*, 692 F.3d 1009, 1015 (9th Cir. 2012). However, the Copyright Act "carves out an important exception . . . for 'works made for hire.'" *Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730, 737 (1989) (citing 17 U.S.C. § 201(b)). A "work made for hire" is defined as "a work prepared by an employee within the scope of his or her employment." 17 U.S.C. § 101. If a work is made for hire, "the employer or other person for whom the work was prepared is considered the author" and owns the copyright "unless the parties have expressly agreed otherwise in a written instrument signed by them." § 201(b).

AIS fails to plausibly allege that it is the author or owner of the copyright under either theory. AIS never explains why Driver, rather than AIS, is identified as the copyright author or claimant. Nor does it identify Driver's position or role in the company, allege that he created the software within the scope of his employment, or identify any assignment of Driver's rights to AIS. AIS has failed to meet the threshold requirement of a copyright claim—ownership. Without that, its copyright claim necessarily fails.[4] Because amendment may cure that deficiency, Osborn's motion to dismiss is **GRANTED** without prejudice.

---

[4] Osborn also argues that AIS is barred from recovering statutory damages and attorney's fees on its copyright infringement claim. The Copyright Act "leaves no room for discretion." *Derek Andrew, Inc. v. Poof Apparel Corp.*, 528 F.3d 696, 699 (9th Cir. 2008). Section 412 expressly bars statutory damages and attorney's fees for infringement that begins before registration, unless the copyright is registered within three months of the work's first publication. *Id.* (citing 17 U.S.C. § 412(2)). AIS alleges that Osborn has infringed its software since 2011. But the copyright was not registered until February 2025. *See* Dkt. 25, Ex. D at 10. On this record, AIS is not entitled to statutory damages and attorney's fees for the alleged infringement that began in 2011. If AIS amends it complaint, it must allege plausible facts that establish entitlement to these remedies.

## III. ORDER

Osborn's Rule 12(b)(5) motion to dismiss for insufficient service is **DENIED**. AIS' prior service is **QUASHED** and AIS is **ORDERED** to execute proper service of process on Osborn and SVD by no later than November 20, 2026.

Osborn's Rule 12(b)(6) motion to dismiss AIS' claims is **GRANTED**. AIS' breach of contract and unjust enrichment claims are **DISMISSED** with prejudice. AIS' copyright infringement claim is **DISMISSED** without prejudice. Osborn may file an amended complaint by November 20, 2026.

Dated this 28th day of October, 2026.

BENJAMIN H. SETTLE
United States District Judge